UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROLE ANN HOGAN,

        Plaintiff,                No. 11-cv-14888

vs.                                     Hon. Gerald E. Rosen

NORTHWEST AIRLINES, INC.,
et al.,

        Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS NORTHWEST AIRLINES, INC.'S AND THE UNITED STATES OF AMERICA'S MOTIONS TO DISMISS**

At a session of said Court, held in
the Theodore Levin U.S, Courthouse
on February 19, 2013

PRESENT:    Honorable Gerald E. Rosen
                       U.S. District Court Chief Judge

## I. INTRODUCTION

This premises liability/negligence action is presently before the Court on the Fed. R. Civ. P. 12(b)(6) Motion to Dismiss filed by Defendant Northwest Airlines, Inc. ("NWA")[1], and the United States Government's separately-filed Motion to Dismiss this case pursuant to Fed. R. Civ. P. 12(b)(1) and (6). Plaintiff has responded to both motions and the Defendants have replied. Having reviewed and considered the parties' briefs and the entire record of this matter, the Court has determined that oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), this matter will be decided on the briefs on file as of this date.

---

[1] Northwest Airlines is now known as "Delta Airlines."

1

This Opinion and Order sets forth the Court's ruling.

## II. FACTUAL BACKGROUND

On November 6, 2008, Plaintiff Carole Ann Hogan entered Wayne County Metropolitan Airport in Romulus, Michigan to board a flight to Memphis, Tennessee. [Complaint, ¶ 12; *see also*, Hogan Affidavit, Ex. A to Hogan's Response to the Government's Motion to Dismiss, Hogan Affidavit, ¶ 1, Dkt. # 14-2.]. Hogan was not feeling well that morning and "was not up for the walk" through the terminal to the boarding gate. Compl., ¶ 13; Hogan Aff. ¶ 2. She, therefore, requested a wheelchair and the services of a Northwest Airlines wheelchair attendant. *Id.* Upon reaching the Transportation Security Administration ("TSA") checkpoint, Hogan advised the TSA agent that she was not feeling well and asked if she could remain in her wheelchair to go through the metal detector. Compl., ¶ 14. The agent denied Hogan's request to remain in the wheelchair. *Id.* ¶ 16. The agent further assured Hogan that she would not fall on her brief walk through the metal detector. *Id.*, ¶ 17. The TSA agent then instructed Hogan to leave the chair to walk through the metal detector, and the agent extended her hand to assist Hogan. *Id.* ¶ 18. The agent, however, apparently was not close enough to Hogan for Hogan to reach her outstretched hand, and Hogan lost her balance and fell to the floor. *Id.* ¶ 19. As a result, she suffered a swollen right knee, a swollen neck, and an injury to her right shoulder. *Id.*, ¶¶ 24-25. The NWA wheelchair attendant provided Hogan with ice packs for her injuries. *Id.*, ¶ 24. Hogan was then directed to "Gate A-11," where she was treated by two Airport Firefighters. *Id.*, ¶ 26-27.

Shortly after her fall, Hogan filed an injury report with the Wayne County Metropolitan Airport Police ("Airport Police"). [See Hogan Aff., Ex A to Hogan's Response to Government's Motion to Dismiss, ¶¶ 12-13, Dkt. # 14-2; *see also* Wayne County Airport Report Redacted,

Hogan Response, Ex. B, Dkt. #14-3.]   According to Hogan, the "Airport Authority" assured her that the report would be forwarded to the TSA.

The police report, however, apparently never made it to TSA, nor is there any record that Ms. Hogan ever filed any complaint or claim directly with TSA.  [See Affidavits of Robert Grimes,  Claims Section Chief with the TSA,  Dkt. Nos. 11-1 and 16-1, attesting that the TSA records do not reflect that a claim on behalf of Hogan was ever received regarding any matter.][2]

On November 5, 2011, i.e., one day shy of three years after her fall, Hogan instituted this action, naming as defendants, NWA, Detroit Metropolitan Wayne County Airport, and the United States of America.  The parties subsequently stipulated to the dismissal of Detroit Metropolitan Airport.  NWA and the United States now separately move for dismissal.

### III.  PLAINTIFF'S CLAIMS AGAINST NORTHWEST AIRLINES

**A.    THE STANDARDS GOVERNING NWA'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Through its motion, Defendant NWA seeks the dismissal of Hogan's complaint pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) authorizes the Court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted . . . ." In deciding a motion brought under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). Yet "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556

---

[2] Grimes has provided two affidavits because he performed two searches of the TSA's claims records. He first searched for "Carole Ann Hogan." [ *See* Grimes Aff., Dkt. # 11-1.]  Plaintiff subsequently filed her Response to Government's Motion to Dismiss in which she stated that she had  realized that her name had been misspelled in the police report, identifying her as **Carlo** Ann Hogan. Therefore, Grimes conducted a second record search for claims received from a Carlo Hogan.  Again, he found nothing on file. [*See* Dkt. #. 16-1.]

U.S. 662, 678 (2009). "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." ) (internal quotation marks, alterations, and citations omitted). Thus, to withstand a motion to dismiss, the complaint's factual allegations, accepted as true, "must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

The Court will apply these standards in deciding NWA's Rule 12(b)(6) Motion in this case.

**B. PLAINTIFF'S CLAIM AGAINST NWA DOES NOT SURVIVE BECAUSE THE FACTUAL ALLEGATIONS IN THE COMPLAINT DO NOT RAISE A PLAUSIBLE RIGHT TO RELIEF.**

Hogan claims that NWA is liable for negligence. "In Michigan, a *prima facie* case of negligence requires a plaintiff to prove four elements: duty, breach of that duty, causation and damages." *Case v. Consumers Powers Co.*, 463 Mich. 1, 6 (2000). "The first element in a claim for negligence is duty,…which exists [when] the relationship between the parties gives rise to a legal obligation." *Kessler v. Visteon Corp*., 448 F.3d 326, 330 (6th Cir. 2006) (applying Michigan law). "Whether circumstances exist causing a defendant's duty to arise is a threshold question of law for the trial court to decide." *Njoku v. Nw. Airlines, Inc.*, 806 F.Supp.2d 1022,

1027 (E.D. Mich. 2011); *see also Burnett v. Bruner*, 247 Mich. App. 365, 367, 636 N.W.2d 773, 775 (2001). Only if Hogan alleges facts that make it plausible that NWA owed to her a duty has she stated a claim that will survive a Rule 12(b)(6) motion to dismiss.

Hogan's complaint charges NWA with premises liability, asserting that NWA had a duty to exercise reasonable care to protect its business invitees. To recover under a claim of premises liability, the plaintiff must show that the defendant was in possession and control over the premises. *Derbabian v. S & C Snowplowing*, 249 Mich. App. 695, 702, 644 N.W.2d 779, 782-83 (2002). "It is the possessor of the land who is liable for injuries to invitees because the possessor is in possession and control of the premises and in a position to exercise the power of control and expulsion." *Merritt v. Nickelson*, 407 Mich. 544, 553-54 (1980); *see also Tillman v. Great Lakes Steel Corp.*, 17 F.Supp.2d 672, 675 (E.D. Mich. 1998) (citing *Merritt*, 407 Mich. at 552)

Hogan was the business invitee of NWA -- she was a client of NWA in a terminal out of which NWA operates. However, the facts alleged by Hogan do not suggest that NWA had either "possession" or "control" over the location where she was injured.

Hogan sustained her injuries at the metal detector in the TSA security checkpoint while complying with TSA procedures. The security area was under the exclusive control of the TSA and the United States of America. Hogan's allegations do not support any reasonable inference that NWA owed a duty to Hogan while she was within the bounds of the TSA security area.

In *Orr v. Pacific Southwest Airlines*, 208 Cal. App. 3d 1467, 1473 (1989), the court dismissed a premises liability claim finding that the plaintiff, who suffered injuries in the area of a state-run security checkpoint, was "injured in a location *not* under the [airline's] exclusive control." *Id.* In Hogan's case, she was injured in a location *wholly* outside of the airline's control. In *Navarez v. Am. Airlines, Inc.*, 2010 WL 5072114 (S.D.N.Y. 2010), the court rejected

the plaintiff's claim that an airline controls the TSA security area and instead found that the security area was wholly a "federal facility." *Id.* at *2.

The federal regulations that govern the operation of TSA security areas emphasize the exclusive control that the TSA exercises over those areas. For example, the regulations provide that "no person may [proceed beyond] the security checkpoint [ ] without complying with the procedures put in place by the TSA." 49 C.F.R. § 1540.105(a)(2). Further, "[n]o person, even an airline attendant, may interfere with TSA screening personnel." 49 C.F.R. §1540.109. The regulations indicate that Hogan was required to comply with the TSA agent's directives, and indicate that the NWA wheelchair attendant could only allow Hogan to proceed through the detector as directed by the TSA agent. The regulations confer an absolute authority on the TSA personnel within the screening area to the exclusion of all other airport staff or patrons. NWA cannot be said to bear the burden of a duty for premises liability where it did not possess or control the premises at issue. *See Merritt*, 407 Mich. at 552.

Additionally, Hogan alleges that NWA failed in its duty to aid. Generally, Michigan law imposes no duty to aid another. However, such a duty may arise when a "special relationship" is present. *Garza v. NW Airlines Inc.,* 305 F.Supp.2d 777, 782 (E.D. Mich. 2004) (citing *Williams v. Cunningham Drug Stores, Inc.*, 429 Mich. 495, 499 (1988)). Common carriers, such as Defendant NWA, may be deemed to possess a special relationship to – and hence a duty to assist – all of its passengers that may be in "danger" and under its "control."[3] *See Garza*, 305 F. Supp.

---

[3] The rationale behind imposing a duty to protect on common carriers is based on the concept of *control*. In a situation where one person entrusts himself to the control and protection of another, with a consequent loss of control to protect himself, "[t]he duty to protect is imposed upon the person in control because he is best able to provide a place of safety." *Krass v. Tri-County Sec., Inc.*, 233 Mich. App. 661, 670, 593 N.W.2d 578, 583 (1999); *see also Bennett v. MIS Corp.*, 607

6

2d at 786; *Krass v. Tri-County Sec., Inc.*, 233 Mich. App. 661, 670, 593 N.W.2d 578, 583 (1999). However, there are instances where an overriding, legislatively-declared public policy[4] limits the scope of one's duty. *See Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323, 1343 (E.D. Mich. 2011); *see also Bertrand v. Alan Ford, Inc.*, 449 Mich. 606, 614, 537 N.W. 2d 185, 188 (1995) (citing *Moning v. Alfono*, 254 N.W.2d 759,765 (Mich. 1977.

Hogan alleges that at the time she fell, she was under the supervision of an NWA wheelchair attendant. Although NWA, as a common carrier, does have a general duty to assist its passengers when the passengers are in peril, the Court nevertheless finds that Hogan's case against NWA should be dismissed for failure to state a claim for several reasons.

First, Hogan was not in any "danger" when the NWA attendant provided her with wheelchair assistance. When Hogan asked the attendant for transportation assistance, Hogan merely represented that she was not feeling well enough to walk to her gate. Not until Hogan fell beyond the reach of the TSA agent did the attendant's duty to aid – for which the failure to exercise reasonable care might render NWA liable for negligence – arise. When the attendant came to Hogan's aid after her fall, he provided Hogan with an ice pack for her injuries. Hogan

---

F. 3d 1076, 1099 (6th Cir. 2010 (applying Michigan law) ("The rationale behind imposing a duty to protect in these special relationships is based on control.").

[4] "Determining whether a legal duty ought to be imposed requires a court to balance the utility of the actor's conduct and the magnitude of the risk involved." *Fremont*, 811 F.Supp 2d at 1343. In essence, the Federal government has found that the societal interests favor security checkpoints that operate under the exclusive control of the TSA. Therefore, in checkpoints, the interests of an airline in exercising its authority are nullified.

cannot claim negligence based on the airline's duty to aid where the attendant promptly and competently came to her aid after she suffered an injury. [5]

Second, Hogan was not under the control of the NWA attendant at the time of her injury. The TSA not only controls one's access to the "sterile area of the airport," *see* 49 C.F.R. § 1540.105(a)(2), but the TSA also "controls the area beyond where the passenger's passport is checked." *See Navarez v. Am. Airlines, Inc.*, *supra,* 2010 WL 5072114 at *2. Additionally, no airport attendant "may interfere with TSA screening personnel" while in the area of the security checkpoint. 49 C.F.R. § 1540.109. These principles indicate that the airline attendant's control over Hogan dissolved at the checkpoint entrance; from there on, he had no ability to challenge the instructions of the TSA agents. When the TSA agents requested that Hogan walk the few feet through the metal detector and offered Hogan their help, the attendant could only remain passive. Hogan cannot establish that the attendant had a duty to prevent her injuries before they occurred because the attendant was neither in control of Hogan nor was the attendant aware that she was in any danger.

Third, Congress' decision to create the TSA, overrides any duty of an airline to assist passengers when those passengers are under the TSA's control.[6] NWA cites the federal regulations that give the TSA ultimate authority over all other persons within the security checkpoint.[7] Title 49 mandates that the TSA operate security checkpoints in airport terminals to

---

[5] If after he had provided these ice packs, the attendant had unreasonably failed to notify medical personnel or negligently re-injured the plaintiff, then a claim against the attendant might exist within the contemplation of the "good samaritan" rule as set forth in Prosser & Keaton. *See* discussion *infra* at p. 9. However, such a situation is not presented here.

[6] See *supra* n. 4, at 6.

[7] *See* 49 C.F.R. § 1540.105(a)(2) ("No person may interfere with any [TSA measure]. Further, "no person may enter the secured area of the airport…without complying with the procedures put

the exclusion of all other personnel. This is a fitting instance of an overriding, legislatively-declared public policy which limits the scope of a private entity's duty. *Moning*, 254 N.W.2d at 765. Given the regulatory structure of the TSA, NWA's duty to aid a passenger in danger does not extend to preventing injuries that occur at the hand of TSA agents while the passenger is within the TSA's security area.

In an attempt to support her assertion that the NWA wheelchair attendant is liable, Hogan argues that the facts of her situation fit into the scenario described in a Prosser's treatise on torts: "A defendant who attempt[s] to aid [a person in distress], and takes charge and control of the situation…will then be liable for a failure to use reasonable care for the protection of the plaintiff's interests." PROSSER & KEETON, TORTS §53, at 324. Hogan mistakenly maintains that this "good samaritan" rule imposed on the NWA attendant, who aided Hogan by providing her with a wheelchair, the ultimate duty to protect her. In reality however, Prosser envisioned a scenario where a defendant comes to the aid of a victim *after* he is injured, asserts control over the victim's injuries, and then fails to reasonably aid the victim. The attendant here was not attempting to "aid" Hogan in the same sense that Prosser contemplated in his treatise. Hogan was not in distress when the attendant provided the wheelchair. The attendant furthermore was subordinate to the TSA agents who operated the security area. Prosser would not assign a duty to the NWA wheelchair attendant under these circumstances.

In sum, the Court finds that Hogan has failed to demonstrate that NWA owed a duty to maintain the premises on which Hogan was injured. Likewise, Hogan cannot show that NWA owed her a duty to assist while the she was in the security checkpoint area and under the

---

in place by the TSA."); 49 C.F.R. § 1540.107(a) (All persons must submit to TSA screening); 49 C.F.R. § 1540.109 ("No person, even an airline attendant, may interfere with TSA screening personnel.").

direction of TSA agents. Her claims against NWA, therefore, must be dismissed. Accordingly, Defendant NWA's Rule 12(b)(6) Motion to Dismiss will be granted.

### IV. **PLAINTIFF'S CLAIMS AGAINST THE UNITED STATES**

**A.     STANDARDS GOVERNING THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

The TSA seeks to dismiss Hogan's complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and also for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). When a court is presented with has two motions to dismiss, it must first decide the jurisdictional question -- i.e., the Rule 12(b)(1) motion -- because a disposition of a Rule 12(b)(6) motion on the merits is "moot if [the] court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

Motions challenging jurisdiction under Rule 12(b)(1) fall into two general categories: facial attacks and factual attacks. *See, RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir.1996). A facial attack challenges the pleading itself. In considering this type of attack, the court must take all material allegations in the complaint as true, and construe them in light most favorable to the non-moving party. *Id*. By contrast, where, as here, subject matter jurisdiction is factually attacked, the plaintiff bears the burden of proving jurisdiction to survive the motion, and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*. In a factual attack of subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

Further, in a Rule 12(b)(1) motion that factually attacks the plaintiff's assertion of subject matter jurisdiction, if the facts are in dispute, the court can exercise wide discretion to consider affidavits, documents outside the complaint, and even conduct a limited evidentiary hearing. *Id.* Consideration of matters outside the pleadings, however, does not convert the Rule 12(b)(1) motion into a Rule 56 motion, as it would under a Rule 12(b)(6) motion. *Rogers v. Stratton Indus., Inc*., 798 F.2d 913, 195-16 (6th Cir.1986).

## B. **HOGAN DID NOT COMPLY WITH THE REQUIREMENTS OF THE FTCA**

The Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* (the "FTCA"), imposes certain pre-conditions on plaintiffs seeking to sue the United States, federal government agencies and federal employees. One key condition is the requirement that before initiating a judicial action, the plaintiff must first present an administrative claim to the responsible federal agency and obtain a final disposition of that claim.

Section 2675 of the FTCA is clear:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment unless the claimant *shall first have presented his claim to the appropriate federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.* The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § § 2675(a) (emphasis added).

In *McNeil v. United States,* 508 U.S. 106, 113 S. Ct. 1980 (1993), the Supreme Court unequivocally held that the FTCA's exhaustion provision states a jurisdictional requirement, rather than merely a procedural technicality or otherwise waivable condition.

In *Douglas v. United States*, 658 F.2d 445 (6th Cir. 1981), the Sixth Circuit determined "that the requirements of § 2675 are met 'if the claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate *and* (2) *places a value on his or her claim.*' " *Id.* at 447 (quoting *Adams v. United States*, 615 F.2d 284, 289 (5th Cir.1980)) (emphasis in original); *Glarner v. U.S. Dept. of Veterans Admin.*, 30 F.3d 697, 700 (6th Cir. 1994) (same). *See also* 28 C.F.R. § 14.2(a) ("For purposes of … § 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant… an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain...."). Thus, an essential element of a validly filed agency claim is the inclusion of a specific damage request.

The FTCA also contains a statute of limitations for filing an FTCA claim with the proper federal agency. Section 2401(b) of the Act states that a "tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). Thus, a failure to comply with the filing requirements of § 2675(a) within the applicable two-year time limit will bar the court's exercise of jurisdiction over the case. *Rogers v. United States*, 675 F.2d 123, 124 (6th Cir.1982).

Additionally, the FTCA requires that once a claim has been properly and timely filed, and denied by the agency, a claimant must then commence any legal action within six months. 28 U.S.C. § 2675(a). Because the FTCA waives the government's immunity to suit, compliance with the limitations periods set forth in the Act is a condition of the federal government's waiver of that sovereign immunity. *Marley v. United States*, 567 F.3d 1030, 1034 (9th Cir. 2009).

Plaintiff Hogan has not complied with the statutory requirements of the FTCA because she did not file a claim with the administrative agency within two years after her cause of action

accrued. 28 U.S.C. § 2401(b).[8] In fact, she has submitted no claim whatsoever to the TSA. [*See* Reply Brief, Dkt. #16, Ex. 1 – Declaration of Robert Grimes.] She has evidence of only her November 6, 2008 injury report with the Airport Police. It is the lodging of this injury report and the alleged assurance that it would be forwarded to the TSA upon which Plaintiff relies upon as proof of her compliance with the FTCA.

However, the injury report fails to allege any negligence on the part of the TSA staff. The report states only that Hogan "was walking through the x-ray machine at one of the check points when she lost her balance and fell to the ground" and "injured her right knee." [*See* Hogan's Response Brief, Ex. B, Dkt. # 14-3.] No TSA employee is identified or even mentioned in the report. Further, Plaintiff did not even identify at which checkpoint her injury occurred. ("Ms. Hogan was unable to give the location of the checkpoint she had fell at." *Id.*) Simply stated, the report lacks sufficient information to enable the TSA to investigate the matter. Furthermore, there is no indication anywhere in the report of any sum certain sought for her claimed injury.[9]

The ambiguities in the injury report demonstrate that it does not comply with the requirements of the FTCA as specified in *Glarner* and §14.2 of the FTCA regulations. It was not until Hogan filed the Complaint in November of 2011 that the TSA received any notice of her

---

[8] Under the FTCA, a tort claim accrues at the time of the plaintiff's injury. *Barrett v. United States*, 689 F.2d 324, 327 (2d Cir. 1982).. Thus, in this case, Plaintiff had until November 6, 2010 to file an administrative claim with the TSA.

[9] Though Hogan states for the first time in the Affidavit she filed with her Response Brief on May 4, 2012 [Dkt. # 14-2] that she made a request for reimbursement for "medical expenses and other expenses" from the TSA, she does not state when such a request was made nor does she state that she requested reimbursement of a sum certain. Therefore, this vague assertion is insufficient to establish compliance with the FTCA.

claim. The Complaint, however, was filed beyond the two-year period of limitations set forth in Section 2401(b). Because Hogan has not complied with the procedures or statute of limitations of the FTCA, she cannot establish that this Court has jurisdiction over her claims.

C. **HOGAN IS NOT ENTITLED TO EQUITABLE TOLLING**

Hogan argues that her failure to comply with the statutory requirements is of no fault of her own, and, therefore, the Court should extend the FTCA's statute of limitations to allow her to file an appropriate claim with the TSA.

The Sixth Circuit has held that the FTCA is susceptible to equitable tolling. *Glarner, supra*, 30 F.3d at 701(relying on the rebuttable presumption of availability of equitable tolling established in *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990), and holding that § 2401(b)'s requirement may be equitably tolled).[10] Accordingly, the Court may consider whether Hogan may file a tardy FTCA claim.

1. **Hogan's Case Does Not Merit the Court's Use of Its Equitable Powers to Toll the Statute of Limitations.**

A plaintiff is entitled to equitable tolling only if she establishes (1) that she has been pursuing her rights diligently, and (2) that some extraordinary circumstance stood in her way and prevented timely filing. *Holland v. Florida*, ___ U.S. ___, 130 S.Ct. 2549, 2562 (2010) (internal punctuation and citations omitted); *Patterson v. Laffler*, 455 Fed. App'x 606, 609 n.1 (6th Cir. 2012) (noting that the Sixth Circuit views this *Holland* test as replacing the *Andrews* five-part

---

[10] There is, however, a split among the circuits as to whether equitable tolling of the FTCA statute of limitations is available. *See Santos v. United* States, 559 F.3d 189, 204-205 n. 12 (3d Cir. 2009) (compiling cases); *see also Bazzo v. United States*, 2012 WL 3326308 at *1 (6th Cir., Aug. 15, 2012) (unpublished decision.)

test for equitable tolling).[11] However, "the remedy of equitable tolling is extraordinary, and [courts] extend it "only sparingly." *Santos v. United States*, 559 F.3d, 189, 197 (3d Cir. 2009) (citing *Irwin*, 498 U.S. at 96). "It is especially appropriate to be restrictive with respect to extension of equitable tolling in cases involving the waiver of the sovereign immunity of the United States." *Id.* at 197-98; *see also Bazzo v. United States*, 2012 WL 3326308 at *2 ("Because § 2401(b) provides a limited waiver of the United States' sovereign immunity, courts apply equitable tolling sparingly, and not when there has only been a garden variety claim of excusable neglect.") The party seeking equitable tolling bears the burden of proving entitlement to it. *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010).

Hogan claims that the statute of limitations should be equitably tolled because on the day of the injury and in a subsequent telephone call, the Airport Police allegedly assured her that the injury report would be forwarded to the TSA. Even though she maintains that she exercised diligence by phoning NWA's Risk Management Department (one time) to check on the status of her report,[12] she nonetheless has failed to establish she is entitled to equitable tolling.

Equitable tolling applies "only when a litigant's failure to meet a…deadline unavoidably arose from circumstances beyond that litigant's control." *Graham-Humphreys v. Mamphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000). Assuming that the Airport

---

[11] In *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988), the Sixth Circuit established a five part-test required the party seeking equitable tolling to show (1) lack of notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement.

[12] Plaintiff does not state in her Affidavit that she contacted TSA; rather, as indicated, she called NWA's Risk Management Department. [*See* Dkt. #14-3.] She does not state that she inquired as to whether the report had been forwarded to TSA; she only asked whether her report was on file with the airlines Risk Management office. *See id.*

Police failed to forward the report to TSA, for two reasons, the Airport Police's omission did not make it "unavoidable" that Hogan would fail to comply with the two-year statute of limitations.

First, as set forth above, the Airport Police injury report is insufficient to serve as a proper administrative complaint. [See Dkt. #14-3] In this report, Hogan neither attributed the injury to the TSA or any of its agents, nor did she place a dollar value on her claim. The FTCA demands that an agency be afforded a more exact form of notice than what is contained in the injury report. Moreover, Hogan could have submitted an independent complaint directly to the TSA notwithstanding her having filed a report with the Airport Police. Her ability to initiate a claim against the TSA was never beyond her control.

Second, Hogan was not ignorant of the FTCA requirements. As pointed out by the Government in its Reply Brief,

> … Plaintiff's sister, Doll Echols-Jones filed a claim with TSA on June 8, 2008…Plaintiff and her sister have retained the same attorney [ ] to file suit under the FTCA and both currently have cases in federal court.

[USA Reply Br.,Dkt. # 16 at p. 5.]

Echols-Jones (through counsel) alleged in her complaint that she was injured by a TSA agent while going through a security checkpoint at Detroit Metro Airport on March 24, 2008. *See Echols-Jones v. United States Transportation Security Administration*, No. 11-cv-12246, ¶¶ 4,8 . She further alleged in the complaint that "[a] notice of claim was filed against Defendant in this matter on or about June 8, 2008", Compl. ¶ 2 *and* specifically provided the TSA Claim Number of that claim: No. 2008061245579. *Id*.

Hogan was injured in November, 2008 – less than five months later. Hogan's attorney who also represented her sister was obviously familiar with the FTCA's requirement that an administrative claim be filed with the agency before an action could be instituted in federal

16

court.. Thus, the argument that Hogan's compliance with the requirements of the FTCA was "unavoidably" impeded by the Airport Police's failure to forward her incident report to the TSA within two years of the injury belies credibility.

In sum, Hogan has not satisfied the FTCA's presentment requirement set forth in § 2675(a). Furthermore, Hogan does not qualify to have the statute of limitations for her claim equitably tolled. Therefore, the United States' motion to dismiss Plaintiff's Complaint on jurisdictional grounds will be granted.

### D. THE COURT WILL NOT DECIDE MERITS OF THE UNITED STATES' 12(b)(6) MOTION TO DISMISS.

The United States also seeks dismissal of Hogan's complaint based on her failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). However, an operative principle of federal practice is that the merits of a case will not be determined if the court first finds that the action should be dismissed for lack of subject matter jurisdiction. *See Moir, supra*, 895 F.2d at 269 (citing *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) (motion to dismiss for failure to state a cause of action may only be decided after subject matter jurisdiction is established.))

Although it is generally the practice of this Court to provide an opportunity to amend when a plaintiff is faced with a dismissal that is readily curable, here, the jurisdictional defect in Plaintiff's Complaint is not curable. Plaintiff failed to comply with the requirements of the FTCA – a pre-requisite to proceeding in a judicial action -- and the time for doing so has long expired. Further, as a matter of law, Northwest Airlines had no duty to maintain the premises on which Hogan was injured nor did it have any duty to assist Hogan while she was within the boundaries of the federal security checkpoint. Therefore, amendment of Plaintiff's Complaint

would be futile.  Therefore, for the reasons stated in this Opinion, dismissal of Plaintiff's Complaint, in its entirety, is warranted.

## V. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Northwest Airlines Fed. R. Civ. P. 12(b)(6) Motion to Dismiss **[Dkt. # 5]** is GRANTED.

IT IS FURTHER ORDERED that the United States' Motion to Dismiss the complaint under Rule 12(b)(1) **[Dkt. # 11]** is GRANTED.

There being no claims remaining in this matter,

IT IS FURTHER ORDERED that this case be DISMISSED, in its entirety, WITH PREJUDICE**.**   Let Judgment be entered accordingly.


Dated:  February 19, 2013          s/Gerald E. Rosen
                                   GERALD E. ROSEN
                                   CHIEF JUDGE, UNITED STATES DISTRICT COURT


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, Tuesday, February 19, 2013, by electronic and/or ordinary mail.

                                   s/Julie Owens
                                   Case Manager, (313) 234-5160